**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| JORDAN BRANNON, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 2:11-CV-43-RWS |
| TOWNS COUNTY, GEORGIA, *et al.*, : | |
| : | |
| Defendants. : | |

**ORDER**

This case comes before the Court on Defendants' Motion to Dismiss [4]. After a review of the record, the Court enters the following Order.

**Factual Background[1]**

This case arises out of a traffic stop conducted by Defendants Donaldson, Shattles, Dyer, Goolark, Goolark, and Rodey on March 19, 2010 (collectively, "Individual Defendants").[2] Comp., Dkt. No. [1] at ¶¶ 1, 5, 7. Defendant

---

[1] As this matter is before the Court on a motion to dismiss, the Court takes the factual allegations in the Complaint [1] as true. Cooper v. Pate, 378 U.S. 546 (1964).

[2] In Defendants' Answer, Officers Kenny Goolark, Doe Goolark, and Carson Rodey are identified as Officers Chris Goulart, Brett Goulart, and Carson Rhoton. Dkt. No. [9] at ¶ 4. The Court granted Plaintiff's Motion for Extension of Time of Service [10] and allowed Plaintiff sixty days from the identification of all Defendants through initial disclosures to perfect service. Dkt. No. [12]. All Defendants will be

Donaldson pulled Plaintiff over while traveling through Hiawassee, Georgia where the posted speed limit was fifty-five miles per hour. Id. at ¶¶ 2, 5. At all times prior to the stop, Plaintiff was traveling below fifty-five miles per hour, and Defendant Donaldson acknowledged that Plaintiff "never went above forty miles per hour." Id. at ¶ 6. Plaintiff believes he was targeted for this stop based solely on his race as a black man and that of his passenger, Joanna Lee, who is a white woman. Id. at ¶¶ 1, 7.

As Defendant Donaldson approached Plaintiff's car, he stated that he was "afraid there's dope in that car" and that it "smelled a bit." Id. at ¶ 7. Donaldson also stated, "[A]nd this guy, I don't really know man, something ain't right." Id. After this, another officer informed Donaldson that he knew Lee "had a black boyfriend." Id. Another officer asked Plaintiff how Plaintiff knew Lee and where they were going. Id. The officers also expressed shock that Plaintiff played tennis at Young Harris College instead of basketball. Id. at ¶ 9.

After Plaintiff provided the officers with identification to conduct a computer search, which revealed nothing irregular, Defendant Donaldson stated many times that he was "gonna put the dog on [Plaintiff]." Id. at ¶ 9. Defendant

---

addressed as they are named in the Complaint.

Shattles arrived with the drug dog, and during the dog's search of the car, the officers repeatedly asked the dog to "please sit." Id. at ¶ 10. The drug dog never alerted to the presence of drugs during the search, but a later-filed officer report states the drug dog alerted to the passenger side door. Id. After the drug dog's search, Donaldson stated that he "should have let [Plaintiff] alone," and Defendant Dyer apologized to Lee, calling the stop a "misunderstanding." Id.

Individual Defendants also conducted a search of Plaintiff's person and car interior without Plaintiff's consent. Id. at ¶ 12. Two officers searched Plaintiff's car after taking his keys during a pat down search. Id. They searched the car's interior, glove box and all other compartments, the trunk, fluids under the hood, and all of Plaintiff's packages and personal belongings. Id. During this time, Plaintiff was told he could not observe the search and was required to turn away from his car. Id. After a half-hour detention, Plaintiff and Lee were released without being issued a ticket or warning. Id. at ¶ 14. Based on the above facts, Plaintiff claims Defendants violated his Fourth Amendment rights. Id. at ¶ 19.

Additionally, Plaintiff claims the Towns County Sheriff's Department has a policy of racial profiling by stopping black drivers without cause,

3

especially black drivers with white female passengers. Comp., Dkt. No. [1] at ¶ 20. In further support of this claim, Plaintiff alleges the Towns County Sheriff's Department stopped Lee on multiple other occasions, without reason and under similar circumstances, when she was riding with her husband, who is also black. Id. at ¶ 8. Once, Lee and her husband were stopped three times on a single trip. Id.

In Plaintiff's Complaint, he asserts claims against all Defendants collectively for: (1) violation of his Fourth Amendment rights by stopping and detaining him without probable cause, (2) violation of his Fourteenth Amendment rights of substantive due process and equal protection by stopping and detaining Plaintiff because of his race or because of his race in combination with the race of his passenger, (3) violation of his rights under article 1, section 1 of the Georgia Constitution, which entitles persons to due process, equal protection of the law, and freedom from unreasonable search and seizure, by stopping and detaining Plaintiff because of his race or because of his race in combination with the race of his passenger, (4) false imprisonment for detaining Plaintiff without legal authority, (5) battery for intentionally and with force touching and seizing Plaintiff, and (6) intentional infliction of emotional

4

distress for intentionally engaging in outrageous and unlawful conduct that caused Plaintiff severe emotional distress. Comp., Dkt. No. [1] at ¶¶ 19-23.

In Plaintiff's Complaint, he seeks, *inter alia*, "nominal and compensatory damages against *each* defendant" and "injunctive and declaratory relief preventing a custom or policy of race based stops applicable to all law enforcement officers acting with Defendants under Federal Rule of Civil Procedure 65." Id. at 10 (emphasis added).

Defendants move to dismiss on several grounds. Dkt. No. [4]. Defendant Sheriff Clinton moves to dismiss all federal law claims seeking injunctive relief on grounds that Plaintiff failed to plead sufficient facts to state a claim upon which relief can be granted. Defendant Sheriff Clinton moves to dismiss state law claims seeking injunctive relief, arguing that he has Eleventh Amendment immunity from such claims. Plaintiff has abandoned all claims for damages against Sheriff Clinton. Dkt. No. [5] at 1-2.

Defendant Towns County moves to dismiss all federal and state law claims on grounds that Sheriff Clinton and his deputies are state, not county actors, and therefore their alleged acts or omissions cannot give rise to county

liability. Towns County also moves to dismiss state law claims on grounds of state sovereign immunity.

Defendants Donaldson, Shattles, Dyer, Goolark, Goolark, and Rodey move to dismiss for lack of service, but have since waived service. Dkt. No. [7] at ¶ 3.

## Discussion

I. Preliminary Matters

Defendants Donaldson, Shattles, Dyer, Goolark, Goolark, and Rodey move to dismiss for lack of service, but have since waived service. Dkt. No. [7] at ¶ 3. As such, Defendants Donaldson, Shattles, Dyer, Goolark, Goolark, and Rodey's Motion to Dismiss for lack of service is rendered **MOOT**.

II. Legal Standard

When considering a motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal citations omitted); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir.

1999). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

The United States Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Twombly, 127 U.S. at 561(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Supreme Court has replaced that rule with the "plausibility standard," which requires that factual allegations "raise the right to relief above the speculative level." Id. at 556. The plausibility standard "does not [however,] impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." Id.

III. Analysis of Claims

Plaintiff brings his federal claims under 42 U.S.C. § 1983, a statutory vehicle for addressing the violation of civil rights. It provides as follows:

7

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. "In order to prevail in a civil rights action under section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a *person* acting under color of law.'" Marshall County. Bd. of Educ. v. Marshall County. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (emphasis added) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)). In Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" when sued for damages. On the other hand, state officials sued in their official capacities for prospective injunctive relief are "persons" amendable to suit under § 1983. Id. at 71 n.10.

8

### A. Claims against Sheriff Clinton in his official capacity

Although Plaintiff seeks damages for "nominal and compensatory damages against each defendant" in his Complaint, Dkt. No. [1] at 10, Plaintiff specifically states in his Response to Defendants' Motion to Dismiss that he "agrees that there are no claims in this lawsuit for damages against the Sheriff in his official capacity for violations of state or federal law." Dkt. No. [5] at 1. Plaintiff clarifies that the "case presents equitable relief claims against Sheriff Clinton in his official capacity, and damage claims against other defendants in their individual capacities." Id. at 2. Accordingly, the Court deems abandoned any claims for damages against Sheriff Clinton in his official capacity that may have been alleged in the Complaint and will consider only Plaintiff's claims for injunctive relief against Sheriff Clinton.

States and their agencies enjoy sovereign immunity from suit pursuant to the Eleventh Amendment to the U.S. Constitution absent a waiver by the State or valid congressional abrogation. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984). Eleventh Amendment immunity from suit does not extend, however, to claims for prospective injunctive relief brought against state officials in their official capacities. Wu v. Thomas, 863 F.2d 1543, 1550

(11th Cir. 1989) (citing Ex Parte Young, 209 U.S. 123 (1908)). In Manders v. Lee, 338 F.3d 1304, 1310 (11th Cir. 2003), the Eleventh Circuit held that a Georgia sheriff is a state official for purposes of implementing law enforcement policies at county jails. Further, in Grech v. Clayton County, 335 F.3d 1326, 1327-28, 1334-35 (11th Cir. 2003), the Eleventh Circuit held that a Georgia sheriff is a state official for purposes of enacting policies for conducting arrests. Accordingly, Sheriff Clinton is a state official and is not entitled to Eleventh Amendment immunity from Plaintiff's claims for prospective injunctive relief, whether based on state or federal law.[3]

Here, Plaintiff seeks an injunction to "prevent[] a custom or policy of race based stops" for all law enforcement officers "acting with Defendants."

---

[3] Defendant Sheriff Clinton argues that claims for injunctive relief based on state law are barred by the Eleventh Amendment under Pennhurst State School and Hospital v. Halderman, 465 U.S. 89 (1984). However, the Court in Pennhurst held that the Eleventh Amendment bars state law claims for injunctive relief against state officials only when "the state is the real, substantial party in interest." Id. at 101 (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945). The Court held, "The reasoning of our recent decisions on sovereign immunity thus leads to the conclusion that a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when–as here–the relief sought and ordered has an impact directly on the State itself." Id. at 117. In Pennhurst, the grant of injunctive relief against the state official would have required substantial monetary expenditures on the part of the state, thus making the state the real party in interest. No such concern is present here, making the Pennhurst holding inapplicable.

Comp., Dkt. No. [1] at 10. Plaintiff alleges that Sheriff Clinton and his deputies "have a custom of stopping and detaining African-American drivers, particularly black men driving with white women." Id. at ¶ 9. Sheriff Clinton moves to dismiss based on failure to plead sufficient facts to state a claim upon which relief can be granted. Dkt. No. [6] at 5.

In support of his claim that Sheriff Clinton maintains a racially discriminatory custom or policy, Plaintiff points to the officers' direct and indirect references to race during the suspicion-free traffic stop on March 19, 2010 when Joanna Lee, a white female, was in the car with him. Dkt. No. [5] at 6. The officers expressed surprise when they discovered Plaintiff played tennis on scholarship at Young Harris College, not basketball, and inquired as to how Plaintiff knew Lee, after one officer stated that Lee "had a black boyfriend." Comp., Dkt. No. [1] at ¶¶ 7, 9. The officers detained Plaintiff for a half-hour, conducted a search of Plaintiff's person and car, and conducted a separate drug dog search of Plaintiff's car, yet did not issue Plaintiff a ticket or warning. Id. at ¶¶ 10, 12, 14. Plaintiff also points to the fact that Lee, while in the company of her black husband, had been stopped on multiple occasions in the past, including one trip during which Lee and her husband were stopped three times.

11

Dkt. No. [5] at 6. These stops were conducted without reason and under similar circumstances as the stop against Plaintiff. Comp., Dkt. No. [1] at ¶ 8.

Taking the above facts as true, as the Court is required to do on a motion to dismiss, the Court finds that Plaintiff has pled sufficient facts to state a claim for relief based on the existence of a racially discriminatory policy or practice. In particular, the Court finds sufficient Plaintiff's allegations that, in addition to Plaintiff's own traffic stop, conducted without suspicion or probable cause and while Plaintiff was in the company of Lee, a white woman, Lee has also been subjected to multiple suspicion-free traffic stops while in the company of her black husband. At the motion to dismiss stage, these allegations are sufficient to state a plausible claim for relief, as they constitute more than mere legal conclusions, but rather concrete facts making a plausible showing of a racially-discriminatory policy or practice. As such, Defendant Sheriff Clinton's Motion to Dismiss is **DENIED** as to Plaintiff's claims for injunctive relief.

### B. Claims against Towns County

#### i. Federal Law Claims

It appears from Plaintiff's Complaint that he also seeks damages and injunctive relief against Defendant Towns County for alleged violations of

12

federal law. Comp., Dkt. No. [1] at 10. Towns County moves to dismiss these claims on grounds that they are based on the alleged acts or omissions of Sheriff Clinton and his deputies, for which Towns County cannot be held liable, as the doctrine of respondeat superior is not available against municipalities. Dkt. No. [4] at 3-5.

The Supreme Court has established that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). However, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690. Therefore, under Monell, to state a claim against Towns County, Plaintiff must plead that Towns County maintained an unconstitutional "policy or custom" that Sheriff Clinton or his deputies were executing during the traffic stop at issue. Plaintiff's Complaint fails in this regard.

Plaintiff alleges that when the deputies in this case stopped Plaintiff and his companion, they may have been enforcing a county policy of stopping cars

13

based on the race of the driver. Dkt. No. [5] at 3. In support of this claim, and as stated in Part III.A, *supra*, Plaintiff points to the officers' direct and indirect references to race made during the traffic stop at issue. Id. at 6. Plaintiff also points to the multiple prior stops conducted against Lee and her black husband. Id. at 7. However, Plaintiff pleads no facts in support of his claim that the racially-discriminatory policy was promulgated by Towns County or enforced on its authority.

Even if Plaintiff had pled facts indicating the existence of a *county* policy or custom, Plaintiff still could not recover against Towns County because Sheriff Clinton and his deputies are not municipal officers. As stated in Part III.A., *supra*, the Eleventh Circuit has held that Georgia sheriffs are state, not county, employees. Manders v. Lee, 338 F.3d 1304, 1310-11 (11th Cir. 2002). Further, the Eleventh Circuit has recognized that "[d]eputies . . . are employees of the sheriff and not the county." Id. at 1311. Accordingly, Towns County cannot be held liable under § 1983 for the alleged acts or omissions of Sheriff Clinton and his deputies.

For the foregoing reasons, Defendant Towns County's Motion to Dismiss is **GRANTED** as to all federal law claims.

### ii. State Law Claims

To the extent Plaintiff asserts claims against Towns County based on alleged violations of state law, again, the only plausible basis on which to hold Towns County liable is for the acts and omissions of Sheriff Clinton and his deputies. However, as established in Parts III.A and III.B.i, *supra*, neither Sheriff Clinton nor his deputies are county actors under Georgia law. As Plaintiff has alleged no basis on which Sheriff Clinton or his deputies were acting under the authority of Towns County, Plaintiff's state law claims against Towns County must fail. Accordingly, Defendant Towns County's Motion to Dismiss is **GRANTED** as to all state law claims.

## Conclusion

Based on the foregoing, Defendants' Motion to Dismiss [4] is **GRANTED** in part and **DENIED** in part. Defendants Donaldson, Shattles, Dyer, Goolark, Goolark, and Rodey's Motion to Dismiss for lack of service is **MOOT**. Claims for damages against Sheriff Clinton in his official capacity are deemed **ABANDONED**. Defendant Sheriff Clinton's Motion to Dismiss is **DENIED** as to all claims for injunctive relief. Defendant Towns County's Motion to Dismiss is **GRANTED** as to all claims. Having reached a final

15

decision on Defendants' Motion to Dismiss, the Court **ORDERS** that the previously issued stay be lifted. See Dkt. No. [8].

    **SO ORDERED**, this  24th  day of October, 2011.

                                **RICHARD W. STORY**
                                United States District Judge