IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

JORDAN BRANNON,                      :
                                     :
            Plaintiff,               :
                                     :
      v.                             :      CIVIL ACTION NO.
                                     :      2:11-CV-43-RWS
SHERIFF CHRIS CLINTON, et            :
al.,                                 :
                                     :
            Defendants.              :

## ORDER

This case comes before the Court on the Motion for Summary Judgment [37] of Defendant Curt Donaldson and Defendant Chris Clinton, in his official capacity as Sheriff of Towns County, Georgia.  After reviewing the record, the Court enters the following Order.

### Background

This case arises out of a traffic stop and search of Plaintiff's vehicle and person, which took place on March 19, 2010.  In the Complaint, Plaintiff alleges that the traffic stop and searches violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and searches and were based solely on Plaintiff's race, in violation of the equal protection clause of the Fourteenth

Amendment.  (Compl., Dkt. [1] ¶¶ 19-20.)  Plaintiff also alleges violations of the search and seizure and equal protection provisions of the Georgia Constitution.  (Id.)  The facts are as follows and, except where otherwise indicated, are undisputed.

## I.    The Traffic Stop

On March 19, 2010, the date of the incident alleged in the Complaint, Plaintiff Jordan Brannon ("Plaintiff" or "Brannon") drove four of his college friends to a residence near Hiawassee, Georgia for a social event.  (Defs.' Statement Of Material Facts To Which There Exists No Genuine Issue To Be Tried ("Defs.' SMF"), Dkt. [37-7] ¶ 1.)  Later that evening, Plaintiff left the residence in his vehicle with his friend, Joanna Lee, and drove on Highway 76 through Hiawassee toward Young Harris, Georgia.  (Id. ¶ 3.)  Defendant Lieutenant Curt Donaldson of the Towns County Sheriff's Office ("Defendant Donaldson" or "Donaldson") was on duty at the time as the uniform patrol commander.  (Id. ¶ 6.)  At the time, Defendant Donaldson had been a Georgia certified peace officer since January 2001.  (Id. ¶ 7.)  Prior to joining the Towns County Sheriff's Office, Defendant Donaldson served as an agent of the White County Sheriff's Office, assigned to a multi-jurisdictional drug task force.  (Id.

2

¶ 8.)  On the date of the incident at issue, Defendant Donaldson was specially

trained in traffic interdiction for illegal narcotics and drug trafficking.  (Id. ¶ 9.)

At around 10:00 p.m. on March 19, 2010, Defendant Donaldson was

driving home following a sixteen-hour work day.  (Id. ¶ 12.)  Plaintiff claims

that Defendant Donaldson's marked police vehicle got behind Plaintiff's

vehicle in Hiawassee.  (Id. ¶ 13.)  Defendant Donaldson followed Plaintiff's

vehicle, at a distance of between fifteen and twenty feet, on Highway 76

between Hiawassee and Young Harris for at least three miles.  (Id. ¶¶ 15-16;

Donaldson Dep., Dkt. [52-1] at 40:1-6; 41:2-4.)  Over the entire route traveled

by the parties, Highway 76 had two travel lanes in the direction the parties were

traveling.  (Defs.' SMF, Dkt. [37-7] ¶ 16.)  The speed limit for Highway 76

between Hiawassee and Young Harris was fifty-five miles per hour.  (Id. ¶ 17.)

(As Highway 76 enters Young Harris, however, the speed limit changes to

forty-five miles per hour, and the speed limit in Young Harris is thirty-five

miles per hour.  (10/15/12 Dep. of Loal C. Donaldson ("Donaldson Dep."), Dkt.

[52-1] at 47:2-4; 49:13-19.))

The parties give divergent accounts of Plaintiff's driving leading up to

the traffic stop.  According to Defendant Donaldson, during the entire trip,

Plaintiff drove at an unusually slow speed, at forty miles per hour or less, despite the speed limit being fifty-five miles per hour.  (Donaldson Dep., Dkt. [52-1] at 43:14-17; 45:12-14; 49:23-50:2; 52:22-53:1.)  Defendant Donaldson also testified that Plaintiff swerved in his lane, touching or crossing the lane lines.  (<u>Id.</u> at 53:2-5.)  Finally, Defendant Donaldson claims that Plaintiff changed lanes three times without using a turn signal.  (<u>Id.</u> at 53:9-10.) Defendant Donaldson testified that he stopped Plaintiff's vehicle for these reasons:  "I said, Sir, the reason I stopped you this evening I observed that you were weaving in your lane.  You crossed, you changed lanes three times without using your turn signal.  I also observed the fact that as you're climbing up the mountain you never got up to the posted speed and when we were coming down the mountain your vehicle never got above 30, 35 miles an hour coming down the mountain."  (<u>Id.</u> at 56:18-25.)  In the investigative report prepared after the incident, Defendant Donaldson listed Plaintiff's unusually low rate of speed and the fact that Plaintiff had swerved in his lane, touching or crossing lane lines, as the reasons for the traffic stop.  (<u>Id.</u> at 52:22-53:13.)

Plaintiff generally disputes Defendant Donaldson's characterization of Plaintiff's driving preceding the traffic stop.  Plaintiff testified in his deposition

4

that he did not believe he switched lanes but, rather, stayed in the left lane of travel the entire time he was being followed by Defendant.  (3/16/12 Dep. of Jordan Brannon ("Pl.'s Dep."), Dkt. [42] at 60:6-12, 21; 62:15-19; 73:17-19.) Plaintiff further denies that he ever swerved in his lane.  (Id. at 88:25-89:6.) Finally, Plaintiff contends that he was driving at approximately forty-five miles per hour during the entire trip.  (Id. at 71:24-25; 72:18-73:5; 73:5-73:13.)

After following Plaintiff's vehicle for at least three miles, Defendant Donaldson signaled for Plaintiff to pull over, and Plaintiff turned off Highway 76 into a local parking lot.  (Defs.' SMF, Dkt. [54] at 26.)  Defendant Donaldson introduced himself to Plaintiff as an officer of the Towns County Sheriff's Office and explained that the reason for the stop was that Plaintiff drove slowly for the marked speed limit, weaved in his lane, and changed lanes three times without using his turn signal.  (Id. ¶ 30.)

Defendant Donaldson contends that he could not see the race or gender of the occupants of the vehicle prior to approaching the vehicle on foot. (Donaldson Decl., Dkt. [37-1] ¶ 5; Donaldson Dep., Dkt. [52-1] at 41:2-12.)  He further contends that after he knocked on the window of Plaintiff's vehicle, Plaintiff slowly looked back at him and opened the vehicle door, without rolling

5

down the window.  (Defs.' SMF, Dkt. [37-7] ¶ 29; Donaldson Dep., Dkt. [52-1] at 61:3-6.)  Defendant Donaldson believed that he smelled the odor of marijuana coming from the vehicle.  (Defs.' SMF, Dkt. [37-7] ¶ 33.)  According to Defendant Donaldson, he believed that drugs might have been in Plaintiff's vehicle based on Plaintiff's driving mannerisms, "the way that [Plaintiff] slowly looked back at [him], the fact that the driver did not roll his window down and the fact that whenever the door was open and [he] was talking with [Plaintiff], the odor of marijuana [was] coming from the car."  (Donaldson Dep., Dkt. [52-1] at 60:15-61:8.)  Defendant Donaldson returned to his vehicle, called the local 911 operator for a license check, and called for a canine officer to come to the scene with a canine that could detect narcotics.  (Defs.' SMF, Dkt. [37-7] ¶ 37.)

Plaintiff disputes Donaldson's assertion that he could not ascertain the race of the occupants of Plaintiff's vehicle until he approached the vehicle on foot.  (Pl.'s Resp. to Defs.' SMF, Dkt. [54] ¶ 27.)  Plaintiff contends, citing Defendant Donaldson's deposition testimony, that when Donaldson initially pulled onto Highway 76, "his car was situated in the lane next to Plaintiff's vehicle."  (Id. (citing Donaldson Dep., Dkt. [52-1] at p. 40).)  (The Court notes that this testimony does indicate that Donaldson's vehicle was initially in the

6

lane next to Plaintiff's vehicle, but that Plaintiff's vehicle was not directly in front of Donaldson but "a bit ahead." (Donaldson Dep., Dkt. [52-1] at 39:4-11.)) Plaintiff further points out that Defendant Donaldson's headlights were illuminated and that Defendant Donaldson's vehicle was only a few car lengths behind Plaintiff's. (Pl.'s Resp. to Defs.' SMF, Dkt. [54] ¶ 27 (citing Donaldson Dep., Dkt. [52-1] at p. 40; Pl.'s Dep., Dkt. [42-1] at pp. 104-05).) Thus, Plaintiff contends, "Donaldson . . . could likely recognize Plaintiff's braided dreadlocks as the hair of an African-American male and see his non African-American passenger." (Id. (citing Pl.'s Dep., Dkt. [42-1] at pp. 93, 102-05).)

## II.   The Searches

The canine officer, Deputy Billy Shattles ("Deputy Shattles"), arrived at the scene within eighteen minutes after Defendant Donaldson initiated the traffic stop. (Id. ¶ 40.) Deputy Shattles spoke to Plaintiff and then walked the canine around the vehicle two times. (Id. ¶ 41.) Donaldson asked Deputy Shattles whether the canine alerted (id. ¶ 42), and he confirmed to Donaldson that it had alerted to the odor of drugs (id. ¶ 43). Plaintiff disputes that the canine in fact alerted to drugs. (See Pl.'s Resp. to Defs.' SMF, Dkt. [54] ¶ 43 ("Shattles circled the vehicle two times without stopping. While Shattles claims

7

he reported the dog alerted to the presence of drugs in the vehicle, no other person at the scene saw the dog alert.  The video does not contain any visible signs that the dog alerted by stopping and sitting.").)  Plaintiff does not dispute, however, that Deputy Shattles in fact told Defendant Donaldson that the canine had alerted to the presence of drugs in the vehicle.  (See Pl.'s Resp. and Opp'n to Def. Donaldson's Mot. for Summ. J., Dkt. [51] at 15 ("Plaintiff concedes, however, that Deputy Shattles communicated to Donaldson his claim that the dog alerted . . . .").)

After the canine finished sniffing around the vehicle, an unidentified officer patted Plaintiff down.  (Defs.' SMF, Dkt. [54] ¶ 45.)  (Plaintiff cannot identify the officer who conducted the pat down but concedes it was not Defendant Donaldson.  (Id. ¶ 53.))  The pat down involved touching Plaintiff's pockets and legs and resulted in no physical injury to Plaintiff.  (Id. ¶ 46.)  During the pat down or immediately thereafter, the officer retrieved Plaintiff's car keys from Plaintiff's pocket.  (Id. ¶ 48.)  The officer did not go into any other pockets.  (Id. ¶ 49.)

After retrieving Plaintiff's car keys, Deputy Shattles began searching the vehicle and was joined by Defendant Donaldson.  (Id. ¶ 55.)  Plaintiff was told

8

he could go back to his vehicle after it was searched.  (<u>Id.</u> ¶ 57.)  The entire

traffic stop lasted less than thirty-five minutes.  (<u>Id.</u> ¶ 58.)  Aside from this

traffic stop, Plaintiff has had no other contact or dealings with Defendant

Donaldson.  (<u>Id.</u> ¶ 59.)

It is undisputed that no officer made any racially derogatory remark or

slur during the traffic stop.  (Defs.' SMF, Dkt. [37-7] ¶ 66.)  As of the date of

Plaintiff's deposition (March 16, 2012), Plaintiff had not been detained on any

other occasion by a Towns County deputy sheriff.  (<u>Id.</u> ¶ 67.)  Plaintiff's

passenger, Ms. Lee, who is Caucasian, has been subject to multiple traffic stops

by the Towns County Sheriff's Office when traveling in the company of her

husband, who is African American.  (3/16/2012 Dep. of Joanna Lee ("Lee

Dep."), Dkt. [41-1] at 52:17-25; 53:1-6.)  These incidents occurred both before

and after the incident alleged in the Complaint.  (<u>Id.</u>)  Ms. Lee testified that for

the first six months after she and her husband moved to Hiawassee, in

November 2007, they were stopped every time they drove together.  (<u>Id.</u> at

42:16-22.)  Each of these stops was conducted by Officer Mark Marshall.  (<u>Id.</u>

at 45:17-22.)  Ms. Lee testified that Officer Marshall only pulled her over when

her husband was also in the vehicle; on occasions when her husband was not in

the vehicle, Ms. Lee drove by Officer Marshall without incident.  (<u>Id.</u> at 50:15-

21.)  Ms. Lee testified that she was stopped two or three times after the date of

the incident alleged in the Complaint and that on each occasion, her husband

was in the vehicle.  (<u>Id.</u> at 53:7-10.)  Ms. Lee does not know the identify of the

officer or officers who conducted these stops.  (<u>Id.</u> at 53:21-23; 54:14-19; <u>see</u>

<u>also</u> Pl.'s Resp. to Defs.' SMF, Dkt. [54] ¶ 90 ("Other officer [sic] participated

[in the stops of Ms. Lee and her husband] and their identities are not known.").)

## III.    Plaintiff's Claims

As a result of the foregoing, Plaintiff initiated this litigation by filing a

Complaint in this Court, raising claims against Defendant Donaldson in his

individual capacity and Defendant Chris Clinton, in his official capacity as

Sheriff of Towns County, Georgia ("Defendant Sheriff Clinton" or "Sheriff

Clinton").  In the Complaint, Plaintiff alleges that Defendant Donaldson

violated the Fourth Amendment prohibition against unreasonable searches and

seizures (and the search and seizure provision of the Georgia Constitution) by

conducting the traffic stop and conducting or permitting the subsequent

searches of Plaintiff's vehicle and person.  (Compl., Dkt. [1] ¶ 19.)  Plaintiff

also alleges that the traffic stop and searches were conducted solely on account

of Plaintiff's race, or his race in combination with that of his passenger, and therefore violated the equal protection clause of the Fourteenth Amendment (and the equal protection provision of the Georgia Constitution).[1]  (Id. ¶ 20.) Plaintiff seeks injunctive relief against Defendant Sheriff Clinton in his official capacity in the form of an Order "preventing a custom or policy of race based stops . . . ."  (Id., "WHEREFORE" clause.)  Defendants Donaldson and Sheriff Clinton now move for summary judgment on each of Plaintiff's claims.  (See generally Defs.' Mot. for Summ. J., Dkt. [37].)  The Court sets out the legal standard governing motions for summary judgment before considering Defendants' motion on the merits.

## Discussion

## I.      Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[1] In the Complaint, Plaintiff also asserted state law tort claims against Defendant Donaldson, which claims Plaintiff has abandoned.  (See Pl.'s Resp. and Opp'n to Def. Donaldson's Mot. for Summ. J., Dkt. [51] at 23 ("Plaintiff hereby dismisses state tort claims against Defendant Donaldson.").)

11

56(a).  "The moving party bears 'the initial responsibility of informing the . . .

court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259

(11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

(internal quotations omitted)).  Where the moving party makes such a showing,

the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does

exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must

view all evidence and draw all reasonable inferences in the light most favorable

to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296

12

(11th Cir. 2002).  But, the Court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.    Defendant Donaldson's Motion for Summary Judgment [37]

As stated in the Background section, supra, Plaintiff raises the following claims against Defendant Donaldson in his individual capacity.  First, Plaintiff alleges that Donaldson violated Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment and Georgia Constitution by (1) conducting the traffic stop, (2) searching Plaintiff's vehicle, and (3)

13

searching Plaintiff's person.[2]  (Compl., Dkt. [1] ¶ 19.)  Second, Plaintiff alleges

that Donaldson violated the equal protection clause of the Fourteenth

Amendment and Georgia Constitution by subjecting Plaintiff to the traffic stop

and subsequent searches solely on account of his race (or his race in

combination with that of his female passenger).[3]  (Compl., Dkt. [1] ¶ 20.)

    Defendant Donaldson moves for summary judgment on Plaintiff's federal

law claims on grounds of qualified immunity.[4]  (See generally Def. Donaldson's

Br. in Supp. of Mot. for Summ. J. ("Def. Donaldson's Br."), Dkt. [37-5].)  The

Court sets out the legal standards governing the defense of qualified immunity

---

[2] Plaintiff also raises his claims for unreasonable search and seizure under the Fourteenth Amendment.  (Compl., Dkt. [1] ¶ 19.)  However, "where a particular amendment 'provides an explicit textual source of constitutional protection' against the conduct of which Plaintiff complains, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing' the claim." Harrison v. Wille, 132 F.3d 679, 681 n.5 (11th Cir. 1998) (quoting Graham v. Connor, 490 U.S. 386, 395 & n.10 (1989)).  Thus, the Court considers Plaintiff's federal law claims for unreasonable search and seizure solely under the Fourth Amendment.

[3] Plaintiff raises his federal law equal protection claim not only under the equal protection clause of the Fourteenth Amendment but also under the due process clause of the Fourteenth Amendment.  For the reasons stated in footnote 2, supra, the Court considers this claim solely under the equal protection clause and not under notions of substantive due process.

[4] The Court considers Plaintiff's state law constitutional claims separately in section D, infra.

14

before considering whether Donaldson is entitled to that defense as a matter of law.

    A.    <u>Qualified Immunity</u>

The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their official capacities. <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999).  Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." <u>Cottone v. Jenne, II</u>, 326 F.3d 1352, 1357 (11th Cir. 2003).  Once the defendant has carried this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity.  <u>Id.</u> at 1358.  To discharge this burden, the plaintiff must "establish[ ] both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation."  <u>Youmans v. Gagnon</u>, 626 F.3d 557, 562 (11th Cir. 2010) (citation omitted).  The Court may consider

15

these two elements in either sequence and decide the case based on either element that is lacking.  Id.

Plaintiff concedes that Defendant Donaldson was acting within the scope of his discretionary authority when conducting the traffic stop and searches that are the subject of the Complaint.  (Pl.'s Resp. and Opp'n to Def. Donaldson's Mot. for Summ. J., Dkt. [51] at 9.)  As such, the only issues for the Court to consider are whether Defendant Donaldson committed a constitutional violation and, if so, whether his conduct was clearly established to be a constitutional violation at the time the conduct occurred.  The Court considers these elements with respect to each of Plaintiff's claims.

B.    Plaintiff's Fourth Amendment Claims

1.    *Traffic Stop*

Plaintiff first challenges the traffic stop as a violation of the Fourth Amendment's prohibition against unreasonable searches and seizures.  (Compl., Dkt. [1] ¶ 19.)  Plaintiff alleges, "By stopping and detaining [Plaintiff] for no legal reason without even arguable probable cause . . . Defendants deprived [Plaintiff] of his right to be secure in his person and to be free from unreasonable searches as seizures . . . ."  (Id.)  In analyzing Defendant

16

Donaldson's qualified immunity defense, the Court's first inquiry is whether the facts, construed most favorably to Plaintiff, show a Fourth Amendment violation.

The Fourth Amendment prohibition against unreasonable searches and seizures by the Government extends to "brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 390 U.S. 1, 30 (1968)). "An officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has reasonable, articulable suspicion that criminal activity is afoot."[5] Jackson v. Sauls, 206 F.3d 1156, 1165 (11th Cir. 2000) (internal quotes and citation omitted). "[W]hile reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Id. (internal quotes and citation omitted). Thus, a stop is not justified where the officer relies solely on a "hunch." Arvizu, 534 U.S. at 274 (citation omitted). At the

---

[5] A traffic stop is also constitutional if it is "based upon probable cause to believe a traffic violation has occurred . . . ." United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008).

same time, however, "[a] determination of reasonable suspicion is based on the totality of the circumstances and it does not require officers to catch the suspect in a crime.  Instead, a reasonable suspicion of criminal activity may be formed by observing exclusively legal behavior."  United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008).

The Supreme Court has emphasized that the standard of reasonable suspicion is not "readily, or even usefully, reduced to a neat set of legal rules." United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotes and citation omitted).  Thus, in evaluating the validity of a traffic stop under this standard, the Court must consider "the totality of the circumstances—the whole picture." Id. (internal quotes and citation omitted).  This includes the understanding that officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."  Arvizu, 534 U.S. at 273 (internal quotes and citation omitted).

Finally, "[a] law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity."  Jackson, 206 F.3d at 1165-66.  Thus, in cases such as this, where

the officer asserts the defense of qualified immunity, "the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." Id. at 1166 (citations omitted). See also Harris, 526 F.3d at 1338 ("[T]he issue is not whether the particular officer involved actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion existed to justify the investigatory stop." (internal quotes and citation omitted)). Stated another way, when an officer seeks summary judgment on the basis of qualified immunity, the Court must "determine only whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that reasonable suspicion or probable cause existed." Young v. Eslinger, 244 F. App'x 278, 279 (11th Cir. 2007) (internal quotes and citations omitted).

Viewing the facts in the light most favorable to Plaintiff, the non-movant, the Court accepts as true Plaintiff's account of his driving preceding the traffic stop. According to this account, for the entire duration of the trip between Hiawassee and Young Harris, which was at least three miles, Plaintiff drove in the left travel lane at approximately forty-five miles per hour, while Defendant

19

Donaldson followed less than three car lengths (fifteen to twenty feet) behind.

The speed limit at the time was fifty-five miles per hour.  The Court finds that

even under this account, which is disputed by Defendant Donaldson, Defendant

Donaldson had at least arguable reasonable suspicion of criminal activity to

justify the traffic stop.  An officer in the position of Defendant Donaldson

reasonably could suspect criminal activity given that Plaintiff drove ten miles

below the speed limit in the left travel lane for at least three miles with a police

officer following only fifteen to twenty feet behind.

Moreover, under Plaintiff's own account of his driving, Defendant

Donaldson had at least arguable probable cause to believe a traffic violation had

occurred or was occurring.  O.C.G.A. § 40-6-184(a)(2) provides as follows:

> On roads, streets, or highways with two or more lanes allowing for
> movement in the same direction, no person shall continue to
> operate a motor vehicle in the most left-hand lane at less than the
> maximum lawful speed limit once such person knows or should
> reasonably know that he is being overtaken in such lane from the
> rear by a motor vehicle traveling at a higher rate of speed . . . .

Similarly, under O.C.G.A. § 40-6-40(b), "any vehicle proceeding at less than

the normal speed of traffic at the time and place and under the conditions then

existing shall be driven in the right-hand lane then available for traffic . . . ."

20

Under Plaintiff's version of events, Plaintiff was traveling ten miles below the speed in the left most lane for at least three miles, while Defendant Donaldson followed less than three car lengths behind. Thus, Defendant Donaldson had at least probable cause to believe Plaintiff was committing traffic offenses. See Gossett v. State, 404 S.E.2d 595, 596-97 (Ga. Ct. App. 1991) (finding traffic stop authorized based on officer's observation of traffic offense, reasoning as follows: "The car was also traveling over ten miles below the maximum speed limit in the left-most lane but would not yield the lane to the officer even though he came upon the car and then followed behind it for approximately two miles. Thus the driver was violating O.C.G.A. § 40-6-184(a)(2) . . . .").

Plaintiff argues that he did not violate O.C.G.A. § 40-6-184(a)(2) as "the record does not contain any evidence . . . that Defendant's vehicle was traveling at a higher rate of speed and attempting to overtake Plaintiff's vehicle." (Pl.'s Resp. and Opp'n to Def. Donaldson's Mot. for Summ. J., Dkt. [51] at 10.) Plaintiff continues, "There is no undisputed evidence that Plaintiff's vehicle was a 'slower moving driver' that needed to cede the left lane." (Id.) The Court finds these arguments unavailing. Plaintiff, under his own account of events, reasonably should have concluded that he was being overtaken by

Officer Donaldson given that Plaintiff was driving ten miles below the speed limit in the left lane, and given that Defendant Donaldson was following "dangerously close" (id. at 3) to Plaintiff for at least three miles.  Moreover, whether Plaintiff actually was in violation of these traffic laws is immaterial. The issue is whether Defendant Donaldson had arguable probable cause to believe a traffic violation was occurring.  Under the facts according to Plaintiff, the Court finds this standard satisfied.

In sum, accepting Plaintiff's account of events as true, the Court finds that Defendant Donaldson had at least arguable reasonable suspicion of criminal activity or arguable probable cause to believe a traffic offense was occurring. Accordingly, the traffic stop was reasonable under the Fourth Amendment. Because the evidence, viewed in the light most favorable to Plaintiff, shows no constitutional violation, the Court's inquiry ends and Defendant Donaldson is entitled to qualified immunity from Plaintiff's Fourth Amendment claim based on the traffic stop.

> ### 2.    *Vehicle Search*

Plaintiff's second Fourth Amendment claim is based on the search of Plaintiff's vehicle subsequent to the traffic stop.  The Fourth Amendment

22

prohibition against unreasonable searches and seizures is safeguarded by the "requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer upon a showing of probable cause."  United States v. Tamari, 454 F.3d 1259, 1261 (11th Cir. 2006).  One exception to this rule that a search be conducted pursuant to a warrant is the "automobile exception." Id.  Under this exception to the warrant requirement, "agents may conduct a warrantless search of a vehicle if (1) the vehicle is readily mobile (i.e., operational); and (2) agents have probable cause to believe the vehicle contains contraband or evidence of a crime."  Id.  "Probable cause, in turn, exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle."  Id. at 1264 (citation omitted).

Because it is undisputed that Plaintiff's vehicle was operational, the Court's inquiry is limited to whether Defendant Donaldson had probable cause to conduct the search.  As stated in subsection 1, supra, where a police officer seeks summary judgment on grounds of qualified immunity, the issue is not "whether . . . probable cause actually existed."  Young, 244 F. App'x at 279. On the contrary, the pertinent inquiry is "whether reasonable officers in the

AO 72A
(Rev.8/82)

same circumstances and possessing the same knowledge as the Defendants could have believed that . . . probable cause existed." <u>Id.</u>

Defendant Donaldson argues that he had probable cause to search Plaintiff's vehicle based on Deputy Shattles's assertion that the narcotics-sniffing dog had alerted to the smell of drugs in Plaintiff's vehicle. (Def. Donaldson's Br., Dkt. [37-5] at 12.).) Plaintiff disputes, however, that the dog actually alerted to the smell of drugs. (<u>See</u> Pl.'s Resp. and Opp'n to Def. Donaldson's Mot. for Summ. J., Dkt. [51] at 15 ("The video [of the traffic stop and subsequent vehicle search] does not reflect that the dog alerted. No witness to the search saw the dog alert."); <u>id.</u> at 15 n.5 ("The fact of the canine alerting to drugs is in dispute.").) Plaintiff concedes, however, that Deputy Shattles "communicated to Donaldson his claim that the dog alerted [to the smell of drugs]." (<u>Id.</u> at 15.)

The Court finds that Defendant Donaldson had at least arguable probable cause to search Plaintiff's vehicle based on Deputy Shattles's representation that the canine had alerted to the presence of drugs. Although Plaintiff disputes that the canine in fact alerted to the smell of drugs, Plaintiff does not dispute that Deputy Shattles informed Defendant Donaldson that the canine had alerted.

24

Plaintiff does not put forward any evidence to create a dispute as to whether Defendant Donaldson believed what he was told—i.e., that the canine had alerted.   Thus, when Defendant Donaldson searched Plaintiff's vehicle, he had at least arguable probable cause.  <u>See</u> <u>Young</u>, 244 F. App'x at 280 ("Plaintiffs dispute whether the dog actually alerted; but they do not provide any evidence to raise an issue of fact as to whether [the defendant] believed that the dog alerted. . . .  Given the uncontroverted evidence that [the defendant] believed the drug dog alerted to the presence of drugs in Plaintiff's vehicle, [the defendant] acted with arguable probable cause in proceeding to search Plaintiff's vehicle . . . [and] is entitled to qualified immunity."); <u>see also</u> <u>Merrett v. Moore</u>, 58 F.3d 1547, 1551 n.7 (11th Cir. 1995) ("[A]n alert by a narcotics trained dog establishes probable cause to believe a car contains illegal narcotics.").  In accordance with the foregoing, the Court finds the search of Plaintiff's vehicle to be in accordance with the Fourth Amendment.  Thus, Defendant Donaldson is entitled to qualified immunity from this claim.

   *3.    Pat Down*

   Finally, Plaintiff alleges that the search of Plaintiff's person by an unidentified officer, not by Defendant Donaldson, violated the Fourth

25

Amendment.  Plaintiff argues that because Defendant Donaldson "opted not to

intervene" to stop the search, he may be held liable for it.  (Pl.'s Resp. and

Opp'n to Def. Donaldson's Mot. for Summ. J., Dkt. [51] at 18.)  Defendant

Donaldson argues that the "failure to intervene" theory applies only in the

context of excessive force, that Defendant Donaldson was not in a position to

intervene, in any event, and, finally, that the pat down was justified under the

circumstances.  (Def. Donaldson's Br., Dkt. [37-5] at 15-17.)

        The Court finds the pat down of Plaintiff's person and search of his

pocket reasonable under the Fourth Amendment.  The pat down in this case was

minimally intrusive as it was restricted to Plaintiff's pockets and legs.  It is well

established that "officers conducting a traffic stop may take such steps as are

reasonably necessary to protect their personal safety."  United States v. Purcell,

236 F.3d 1274, 1277 (11th Cir. 2001) (internal quotes and citation omitted).

"This includes conducting a protective search of the driver . . . ."  Id. (citation

omitted).  Given Deputy Shattles's representation that the canine had alerted to

the presence of drugs in Plaintiff's vehicles, the limited pat down was justified.

See, e.g., United States v. Cruz, 909 F.2d 422, 424 (11th Cir. 1989) (affirming

search of suspected drug trafficker's purse and reasoning, "Because the

26

detective had reasonable suspicion to stop the appellant, she also had the right to make a limited protective search for concealed weapons in order to secure the safety or herself and the safety of those around her."); United States v. Martin, 794 F.2d 1531, 1533 (11th Cir. 1989) (noting that weapons are "tools of the trade" in drug trafficking).  Because the limited search of Plaintiff's person was reasonable under the Fourth Amendment, Defendant Donaldson is entitled to qualified immunity from this claim.

      C.      Plaintiff's Fourteenth Amendment Equal Protection Claim

Finally, Plaintiff alleges that the traffic stop and searches were conducted solely on account of Plaintiff's race, or his race in combination with that of his passenger, and therefore violated the equal protection clause of the Fourteenth Amendment.  (Compl., Dkt. [1] ¶ 20.)  Defendant Donaldson argues that Plaintiff has failed to produce any evidence to support this claim and, therefore, that he is entitled to qualified immunity.  (Def. Donaldson's Br., Dkt. [37-5] at 18-19.)

The Court agrees with Defendant Donaldson that Plaintiff has failed to present any evidence to support his equal protection claim, entitling Defendant Donaldson to judgment as a matter of law.  "To state an equal protection claim,

[the plaintiff] must allege that through state action, similarly situated persons have been treated disparately, and put forward evidence that [the defendant's] actions were motivated by race." Draper v. Reynolds, 369 F.3d 1270, 1278 n.14 (11th Cir. 2004).  In this case, Plaintiff has produced no evidence that Defendant Donaldson treated Plaintiff differently than suspects of other races. There is no evidence in the record regarding any traffic stop or search conducted by Defendant Donaldson other than the one involving Plaintiff alleged in the Complaint.  Although Ms. Lee testified that she was subject to disparate treatment by police officers depending on whether she was traveling with her African American husband, there is no evidence that Defendant Donaldson was a participant in any of the traffic stops of which Ms. Lee complains.  Her testimony, therefore, does not support Plaintiff's equal protection claim against Defendant Donaldson.

Moreover, although Plaintiff vaguely alleges that Defendant Donaldson pulled Plaintiff over because of his race, or his race in combination with that of his passenger's, there is no evidence to support this assertion.  Indeed, Defendant Donaldson affirmatively testified that he was unaware of Plaintiff's race, or the race of Plaintiff's passenger, until after he initiated the stop, when

he approached the vehicle on foot.  Plaintiff speculates that Defendant "could

likely recognize Plaintiff's braided dreadlocks as the hair of an African-

American male and see his non African-American passenger."  This, however,

is mere speculation and does not controvert Defendant Donaldson's affirmative

testimony that he did not know Plaintiff's race prior to initiating the stop.

Defendant Donaldson thus is entitled to qualified immunity from Plaintiff's

equal protection claim.

  In sum, viewing the evidence in the light most favorable to Plaintiff, the

Court finds that Defendant Donaldson did not commit a constitutional violation,

either under the Fourth Amendment or the equal protection clause of the

Fourteenth Amendment, based on the traffic stop or subsequent searches of

Plaintiff's vehicle and person.  Because Plaintiff has failed to produce sufficient

evidence from which a jury reasonably could find a constitutional violation on

the part of Defendant Donaldson, Donaldson is entitled to qualified immunity

from all of Plaintiff's federal law claims.

  D. Plaintiff's State Law Constitutional Claims

  As stated above, in addition to Plaintiff's federal law search and seizure

and equal protection claims, Plaintiff alleges that Defendant Donaldson violated

the search and seizure and equal protection provisions of the Georgia

Constitution.  (Compl., Dkt. [1] ¶¶ 19-20.)  Defendant Donaldson moves for

summary judgment on these claims on several grounds, including on grounds of

official immunity and on grounds that Plaintiff's state constitutional claims fail

on the merits.  (Def. Donaldson's Br., Dkt. [37-5] at 20-23.)

The Court agrees with Defendant Donaldson that Plaintiff's state

constitutional claims are barred by official immunity.  The state constitutional

provision governing official immunity provides as follows:

> [A]ll officers or employees of the state or its departments and
> agencies may be subject to suit and may be liable for injuries and
> damages caused by the <u>negligent performance of, or negligent
> failure to perform, their ministerial functions</u> and may be liable for
> injuries and damages if they act with <u>actual malice or with actual
> intent to cause injury in the performance of their official
> functions</u>. . . .

GA. CONST. art. I, § 2, ¶ 9(d).  The Supreme Court of Georgia has held that the

term "official functions" refers to "any act performed within the officer's or

employee's scope of authority, including both ministerial and discretionary

acts."  <u>Gilbert</u>, 452 S.E.2d at 483.  Accordingly, under Georgia law, "a public

officer or employee may be personally liable only for ministerial acts

negligently performed or acts [ministerial or discretionary] performed with

malice or an intent to injure." <u>Cameron v. Lang</u>, 549 S.E.2d 341, 344 (Ga. 2001).

Plaintiff does not dispute that the acts alleged in the Complaint were discretionary in nature. Thus, to establish liability on the part of Defendant Donaldson under state law, Plaintiff must show that these acts were taken with actual malice or intent to injure. The Court finds, however, no evidence in the record of malice of intent to injure on the part of Defendant Donaldson. Accordingly, Defendant Donaldson is entitled to official immunity from Plaintiff's state law constitutional claims and, therefore, judgment as a matter of law.[6]

E.      Conclusion

In accordance with the foregoing, the Court finds that Defendant

---

[6] Plaintiff's state constitutional claims also fail on the merits for the same reasons that Plaintiff's federal law claims fail. <u>See</u> <u>State v. Kirbabas</u>, 502 S.E.2d 314, 320 (Ga. Ct. App. 1998) ("[The] [state] constitutional provision [governing search and seizure] is similar to the provisions of the Fourth Amendment and are construed in the same way by Georgia appellate courts." (citations omitted)); <u>Barge-Wagener Const. Co. v. Morales</u>, 429 S.E.2d 671, 673 (Ga. Ct. App. 1993) ("The equal protection clause of the Georgia Constitution is 'substantially equivalent' to the equal protection clause of the fourteenth amendment of the U.S. Constitution." (citation omitted)).

Donaldson is entitled to judgment as a matter of law on each of Plaintiff's claims.

## III.    Defendant Sheriff Clinton's Motion for Summary Judgment [37]

Plaintiff also seeks injunctive relief against Defendant Sheriff Clinton, in his official capacity as Sheriff for Towns County, in the form of an Order "preventing a custom or policy of race based stops applicable to all law enforcement officers acting with Defendants . . . ." (Compl., Dkt. [1], "WHEREFORE" clause.)  To obtain a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Peter Letterese & Assocs. v. World Inst. of Scientology Enters., 533 F.3d 1287, 1323 (11th Cir. 2008).  In light of the Court's rulings in Part II, supra, finding that Plaintiff's claims fail as a matter of law, Plaintiff has failed to show any injury, much less an irreparable one.  Plaintiff's claim for injunctive relief against Defendant Sheriff Clinton in his official capacity therefore fails as a matter of law.

32

AO 72A
(Rev.8/82)

## Conclusion

In accordance with the foregoing, Defendants' Motion for Summary Judgment [37] is **GRANTED**.  The Clerk is directed to enter judgment in favor of Defendants and to close the case.

**SO ORDERED**, this  _21st_  day of February, 2013.

_____

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)